IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2009 MAY 29 PM 2: 24

CLERK C Adams
SO. DIST. OF GA.

KEVIN ALAN TAYLOR,                 )
                                   )
        Petitioner,                )
                                   )
    v.                             )        CV 108-127
                                   )
BELINDA DAVIS, Warden,             )
                                   )
        Respondent.                )

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Petitioner, an inmate incarcerated at Dooly State Prison in Unadilla, Georgia, brought

the above-captioned petition pursuant to 28 U.S.C. § 2254.[1] For the reasons set forth below,

---

[1] By way of background, the Court notes that Petitioner filed his original petition on September 10, 2008, and Respondent filed her original answer on November 13, 2008. (Doc. nos. 1, 4). Petitioner then filed motions, requesting either (1) permission to amend his original petition to delete his unexhausted claims or (2) a stay and abeyance order so that he could return to state court to exhaust his unexhausted claims. (Doc. nos. 14, 15). The Court granted Petitioner's request to amend his petition, instructed him to file an amended petition, and accordingly found his motion for a stay and abeyance to be moot. (See doc. no. 17, p. 3). Upon filing of Petitioner's amended petition, Respondent filed her amended answer. (Doc. nos. 19, 20). The Federal Rules of Civil Procedure are applicable to proceedings for habeas corpus "to the extent that the practice in those proceedings . . . is not set forth in a federal statute [or] the Rules Governing Section 2254 Cases . . . and has previously conformed to the practice in civil actions." Fed. R. Civ. P. 81(a)(4). Accordingly, Petitioner's amended petition supercedes and replaces in its entirety the original petition. See Malowney v. Fed. Collection Deposit Group, 193 F.3d 1342, 1345 n.1 (11th Cir. 1999); King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994). Thus, for ease of reference, the amended petition and amended answer are referred to herein simply as the "petition" and the "answer."

the Court **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

## I.  BACKGROUND

On August 27, 2001, Petitioner was jointly indicted with Joseph Scurry, Jr. ("Scurry"), Robert Nathaniel Hall ("Hall"), Demetra Stallings, and Norval Patten ("Patten") by a grand jury sitting in Richmond County, Georgia, for possession with intent to distribute marijuana and trafficking cocaine. (Doc. no. 20, p. 8). Petitioner, Hall, and Patten were tried jointly, and on November 8, 2002, Petitioner was convicted on both counts. (Id.). On November 26, 2002, Petitioner was sentenced to ten years of imprisonment on the possession count and twenty-five years on the trafficking count, with the sentences to be served consecutively. (Id.) Petitioner appealed his convictions and sentences to the Georgia Court of Appeals, raising the following allegations of error:

(1)     the evidence was insufficient to support a guilty verdict on either of the charged offenses;

(2)     the trial court erred in denying Petitioner's motion to sever his trial from that of his co-defendants;

(3)     the trial court erred when it admitted similar transaction evidence against Petitioner's co-defendant that could have been attributed to Petitioner;

(4)     the trial court erred in its instruction to the jury regarding how it was to interpret Petitioner's testimony; and

(5)     trial counsel was ineffective for:

    (a)     failing to object to the alleged erroneous excusal of a juror,

    (b)     failing to prevent the admission of Petitioner's post-arrest statement, and

>     (c)     failing to object to the admission of the post-arrest statement made by Petitioner's non-testifying co-defendant.

See generally Taylor v. State, 647 S.E.2d 381 (Ga. Ct. App. 2007). Petitioner's convictions and sentences were affirmed by the Georgia Court of Appeals on June 6, 2007. Id. at 388.

Petitioner did not seek state habeas corpus relief but instead filed the instant petition for a federal writ of habeas corpus on September 2, 2008, in which he asserts the following as grounds for relief:

>     (1)     trial counsel was ineffective for:
>
> >     (a)     failing to object to the alleged erroneous excusal of a juror,
> >
> >     (b)     failing to object to the admission of the post-arrest statement made by Petitioner's non-testifying co-defendant, and
> >
> >     (c)     failing to object to the use of Petitioner's post-arrest statement;
>
>     (2)     the trial court violated his constitutional right to a fair and impartial trial in instructing the jury regarding how it was to interpret Petitioner's testimony;
>
>     (3)     the trial court violated his constitutional right to a fair and impartial trial in failing to sever Petitioner's trial from that of his co-defendants;
>
>     (4)     the evidence was insufficient to sustain Petitioner's conviction; and
>
>     (5)     the trial court violated his constitutional right to a fair and impartial trial in refusing to give a limiting instruction regarding the use of evidence of similar transactions or other crimes.

(Doc. no. 19, pp. 4-5). Respondent contends in her answer that Petitioner's claims are procedurally defaulted or otherwise without merit. (See generally doc. no. 20).

## II.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), signed into

law on April 24, 1996, amended 28 U.S.C. § 2254(d) to provide:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
>    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court addressed § 2254(d) in Brown v. Payton, 544 U.S. 133

(2005).  The Supreme Court explained the difference between the "contrary to" and

"unreasonable application" clauses in § 2254(d)(1) as follows:

> The AEDPA provides that, when a habeas petitioner's claim has been adjudicated on the merits in state-court proceedings, a federal court may not grant relief unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

Id. at 141 (internal citations omitted).  Thus, under § 2254(d)(1), it is not enough to

demonstrate that a state court's decision is "incorrect or erroneous"; only a showing that the

decision was "objectively unreasonable" will entitle a petitioner to relief.  Wiggins v. Smith,

4

539 U.S. 510, 520-21 (2003). In sum, a habeas petition may be granted if "the state court's decision was contrary to, or involved an objectively unreasonable application of, the governing Federal law set forth by Supreme Court cases." McIntyre v. Williams, 216 F.3d 1254, 1257 (11th Cir. 2000).

Moreover, the AEDPA sets a highly deferential standard of review for state court factual determinations. The AEDPA "requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" Schriro v. Landrigan, 550 U.S. 465, 473-74 (2007) (quoting 28 U.S.C. § 2254(e)(1)); see also Crawford v. Head, 311 F.3d 1288, 1317 (11th Cir. 2002) (affirming state court factual determination "because there is support for it in the record and [the petitioner] has not rebutted the finding by clear and convincing evidence"). Thus, "some evidence suggesting the possibility" that a petitioner's version of the pertinent facts is correct is not sufficient to carry the burden of showing that a state court made an unreasonable determination of fact as contemplated by § 2254(d)(2). Bottoson v. Moore, 234 F.3d 526, 540 (11th Cir. 2000). If the record provides any support for a state court's factual findings, this Court may not set aside those findings unless and until they are rebutted by clear and convincing evidence. Crawford, 311 F.3d at 1317.

### III. DISCUSSION

**A.     Procedurally Defaulted Claims**

**1.     Exhaustion and Procedural Default Rules Explained**

Respondent argues that several of Petitioner's claims are procedurally barred from review because he has not fairly presented them in state court. The AEDPA preserves the

traditional exhaustion requirement, which requires a district court to dismiss habeas claims that the petitioner has a right to raise, by any available procedure, in state court. 28 U.S.C. § 2254(b)(1)(A) & (c). "An applicant shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by *any* available procedure, the question presented." Id. § 2254(c) (emphasis added). In reference to this requirement, the Supreme Court has held that a state inmate is deemed to have exhausted his state judicial remedies when he has given the state courts, or they have otherwise had, a fair opportunity to address the state inmate's federal claims. Castille v. Peoples, 489 U.S. 346, 351 (1989). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).

As the Eleventh Circuit has explained, "[a] state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts." Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001). The exhaustion requirement applies with equal force to all constitutional claims, including claims of ineffective assistance of counsel. Footman v. Singletary, 978 F.2d 1207, 1211 (11th Cir. 1992) ("[A] habeas petitioner may not present instances of ineffective assistance of counsel in his federal petition that the state court has not evaluated previously."). Furthermore, a petitioner's failure to exhaust his claims properly ripens into a procedural default once state

remedies are no longer available. <u>McNair v. Campbell</u>, 416 F.3d 1291, 1305 (11th Cir. 2005) ("It is well established that when a petitioner has failed to exhaust his claim by failing to fairly present it to the state courts and the state court remedy is no longer available, the failure also constitutes a procedural bar.").

A federal habeas petitioner can run afoul of procedural default rules in one of two ways. First, a federal habeas petitioner can improperly attempt to revive an old claim that a state court has previously denied on procedural grounds. When a state court denies a constitutional claim on "adequate and independent"[2] state procedural grounds, the district court is precluded from later reviewing the merits of the claim on collateral attack. <u>Judd</u>, 250 F.3d at 1313.

Likewise, a federal habeas petitioner runs afoul of procedural default rules when he attempts to bring a new claim that would be procedurally barred if he attempted to raise it in state court. In such instances, the petitioner's failure to bring the claim properly in state court has "matured into a procedural default." <u>Smith v. Jones</u>, 256 F.3d 1135, 1139 (11th

---

[2]A state court decision rests upon "adequate and independent" state procedural grounds when it satisfies the following three-part test:

> First, the last state court rendering a judgment in the case must clearly and expressly state that it is relying on state procedural rules to resolve the federal claim without reaching the merits of that claim. Secondly, the state court's decision must rest solidly on state law grounds, and may not be intertwined with an interpretation of federal law. Finally, the state rule must be adequate, *i.e.*, it must not be applied in an arbitrary or unprecedented fashion. The state court's procedural rule cannot be "manifestly unfair" in its treatment of the petitioner's federal constitutional claim to be considered adequate for the purposes of the procedural default doctrine.

<u>Judd</u>, 250 F.3d at 1313 (internal quotations and citations omitted).

Cir. 2001). Thus, where a state procedural bar is apparent, a court "can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief." <u>Snowden v. Singletary</u>, 135 F.3d 732, 736 (11th Cir. 1998); <u>see also</u> <u>Harris v. Reed</u>, 489 U.S. 255, 263 n.9 (1989) ("[A] federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred."). Simply put, if a claim has not been "fairly presented in the state courts, it is procedurally defaulted." <u>Jones v. Campbell</u>, 436 F.3d 1285, 1304 (11th Cir. 2006).

Of note here, under Georgia law, absent a showing of cause to excuse the default and actual prejudice, the failure to object at trial or to raise on direct appeal any alleged error creates a procedural bar to its consideration in a habeas corpus proceeding. <u>See</u> O.C.G.A. § 9-14-48(d); <u>Black v. Hardin</u>, 336 S.E.2d 754, 755 (Ga. 1985) ("The rule now may be stated as follows: a failure to make timely objection to *any* alleged error or deficiency or to pursue the same on appeal ordinarily will preclude review by writ of habeas corpus."). Georgia law also requires that claims of ineffective assistance of trial counsel be raised at the "earliest practicable moment" by new counsel, or absent a showing of cause and prejudice, the claims are procedurally defaulted. <u>White v. Kelso</u>, 401 S.E.2d 733, 734 (Ga. 1991); <u>Thompson v. State</u>, 359 S.E.2d 664, 665 (Ga. 1987).

Of course, the Eleventh Circuit has explained that a procedural default may be excused if certain conditions are met:

> A petitioner may obtain federal review of a procedurally defaulted claim if he can show both cause for the default and actual prejudice resulting from the default. Additionally, in extraordinary cases, a federal court may grant a

> habeas petition without a showing of cause and prejudice to correct a
> fundamental miscarriage of justice.

Jones, 436 F.3d at 1304 (internal citations omitted).  Cause entails a showing "that some

objective factor external to the defense impeded" efforts to comply with the state procedural

rule.  Coleman v. Thompson, 501 U.S. 722, 753 (1991).[3]  A state petitioner may also

demonstrate cause to overcome a procedural default by demonstrating that he received

constitutionally ineffective assistance of counsel.  Turpin v. Todd, 493 S.E.2d 900, 906 (Ga.

1997).  The narrow fundamental miscarriage of justice exception, on the other hand,

encompasses the extraordinary instance in which a constitutional violation probably has

resulted in the conviction of one actually innocent of the crime.  Murray v. Carrier, 477 U.S.

478, 496 (1986).

Before applying these procedural default rules, the Court acknowledges that it is often

difficult in specific cases to determine whether a state prisoner has sufficiently exhausted a

claim.  See, e.g., McNair, at 1302 ("While these broad principles are relatively clear . . . .

many courts have struggled to pinpoint the minimum requirements that a habeas petitioner

must meet in order to exhaust his remedies.").  That said, the issue of whether a claim has

been "fairly presented" to the state courts is a "common sense" inquiry.  Id. at 1302-03.  In

explaining the gist of the requirement, the Eleventh Circuit has explained:

> While we do not require a verbatim restatement of the claims brought in state
> court, we do require that a petitioner present his claims to the state court

---

[3]If a petitioner is able to prove cause, he must then show prejudice by demonstrating
that the errors at trial not only "'created a *possibility* of prejudice, but that they . . . infect[ed]
his entire trial with error of constitutional dimensions.'"  Johnson v. Alabama, 256 F.3d
1156, 1171 (11th Cir. 2001) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)).

"such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation."

Id. at 1302 (quoting Kelley v. Secretary for Dep't of Corr., 377 F.3d 1317, 1344-45 (11th Cir. 2004)). Thus, it is not enough that a federal habeas petitioner "has been through the state courts." Kelley, 377 F.3d at 1343-44 (citing Picard v. Connor, 404 U.S. 270, 275-76 (1971)). Nor may a claim simply be hinted at in a petitioner's state filings; rather, a habeas petitioner must squarely present his claims in state court.

"[T]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record. The ground relied upon must be presented face-up and squarely; *the federal question must be plainly defined.* Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick."

Id. at 1345 (emphasis added) (quoting Martens v. Shannon, 836 F.2d 715, 717 (1st Cir.1988)).

### 2. Application to the Instant Case

In Grounds 2, 3, and 5 of his federal petition, Petitioner alleges that various errors by the trial court resulted in violations of his constitutional right to a fair trial. Specifically, he states that an erroneous jury instruction regarding the evaluation of his testimony (Ground 2), the failure to sever his trial from that of his co-defendants (Ground 3), and the refusal to give the jury a limiting instruction on what Petitioner calls "similar transaction/other crimes" evidence (Ground 5) all resulted in the denial of his right to a fair trial. (Doc. no. 19, pp. 4-5). However, Petitioner did not assert any of these three federal constitutional claims on direct appeal. Rather, he simply alleged these issues as errors of state law and has now attempted to re-cast these same errors in terms of their effect on his federal constitutional

rights. The Court is aware that, as noted above, Petitioner was not required to submit this claim in verbatim fashion to the state courts. McNair, 416 F.3d at 1303. However, he was required "to present the state court[] with the same claim he urges upon" this Court, Picard, 404 U.S. at 276, "such that a reasonable reader would understand each claim's *particular legal basis and specific factual foundation*." McNair, 416 F.3d at 1303 (citations omitted) (emphasis added). More to the point, exhaustion rules require that a state inmate give the state court a fair opportunity to address his federal claims. Castille, 489 U.S. at 351.

The errors Petitioner raised on direct appeal were not based on federal constitutional law but rather on state procedural and evidentiary rules. Notably, in contrast to its discussion of Petitioner's claims regarding ineffective assistance of counsel and insufficiency of the evidence, the Georgia Court of Appeals cited no federal statutes or case law, much less referenced the United States Constitution, in determining that the trial court did not err in its jury instructions (or lack thereof) or in its failure to sever Petitioner's trial from those of his co-defendants. Though the factual foundation for Petitioner's claims were presented on direct appeal, the particular legal basis upon which Petitioner now relies was not. Thus, it cannot be said that Petitioner's federal constitutional claims have been fairly presented to the state courts, and thus these claims remain unexhausted. Because Petitioner failed to raise these claims on direct appeal, they are now procedurally barred. See O.C.G.A. § 9-14-48(d); Black, 336 S.E.2d at 755. Though Petitioner has alleged ineffective assistance of trial counsel, which may constitute cause for his procedural default, as discussed more fully

11

below, these claims are without merit.[4]  Furthermore, Petitioner has failed to present any other evidence to suggest that trial counsel was ineffective or otherwise demonstrate cause as to why his procedural default should be excused.  Because Grounds 2, 3, and 5 have been procedurally defaulted (and this default has not been excused), these claims are barred from review and do not provide a basis for granting federal habeas corpus relief.

Even if the Court were to find that Petitioner had fairly presented these claims in state court and they were not procedurally defaulted, they would still provide no basis for federal habeas relief.  A federal habeas court may entertain an application for a writ of habeas corpus only on the ground that the petitioner is in custody in violation of the United States Constitution, a treaty, or the laws of the United States.  Estelle v. McGuire, 502 U.S. 62, 68 (1991).  A federal court is not concerned with a state's interpretation of its own laws and rules unless the violations raise federal constitutional problems; such matters are of state concern.  McCullough, 967 F.2d at 535-36; see also Dorsey v. Chapman, 262 F.3d 1181, 1190 n.11 (11th Cir. 2001) ("[F]ederal habeas relief does not include the review of state court application of state procedural rules that do not rise to the level of constitutional violations.").  Stated otherwise, a federal habeas court is not a "'super' state supreme court" available to grant relief every time it believes a state court erred.  Shaw v. Boney, 695 F.2d 528, 530 (11th Cir. 1983) (per curiam) (quoting Meyer v. Estelle, 621 F.2d 769, 771 (5th Cir. 1980)).

---

[4]Because Petitioner has not demonstrated cause, the Court does not reach the issue of prejudice.  See Johnson, 256 F.3d at 1171.

As alluded to above, all of Petitioner's federal constitutional claims are based on alleged violations of state procedural and evidentiary law. Thus, if the Court were to consider Petitioner's claims, it would have to pass judgment on the state appellate court's interpretation of its own laws in determining whether Petitioner was denied his right to a fair trial, which this Court may not do. In sum, Grounds 2, 3, and 5 of Petitioner's federal habeas petition are procedurally defaulted, and even if the Court were to find otherwise, they would still afford no basis for federal habeas relief.

**B.      Claims Rejected by the State Court**

### 1.      Alleged Ineffective Assistance of Counsel

In Ground 1 of his federal habeas petition, Petitioner contends that trial counsel was ineffective in several respects. Specifically, he contends that counsel erred by (1) failing to object to the erroneous excusal of a juror, (2) failing to object to the admission of his nontestifying co-defendant's post-arrest statement, and (3) failing to object to the admission of Petitioner's post-arrest statement. (Doc. no. 19, p. 4). Petitioner presented all of these claims on direct appeal. However, specifically applying the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), the state appellate court determined that Petitioner had failed to meet this standard for establishing a claim for ineffective assistance of counsel and therefore rejected his claims. See Taylor, 647 S.E.2d at 388.

As correctly noted by the Georgia Court of Appeals, ineffective assistance of counsel claims are analyzed under the two-prong test set forth by the Supreme Court in Strickland. To make out a claim of ineffective assistance of counsel, Petitioner must first show that "counsel's representation fell below an objective standard of reasonableness." Strickland,

466 U.S. at 688. Second, he must show that he suffered such prejudice that, but for his appellate counsel's errors, there is a reasonable probability that the results of the proceeding would have been different. Id. at 694. The facts of Strickland, however, are dissimilar from those presented here. Moreover, it cannot be said that the result reached by the state appellate court was contrary to clearly established federal law. Thus, the Court will focus its attention on whether the state appellate court unreasonably applied Strickland to the facts of this case. Bell v. Cone, 535 U.S. 685, 699 (2002) ("[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly. Rather, [the petitioner] must show that the [state court] applied Strickland to the facts of his case in an objectively unreasonable manner." Id. (internal citations omitted)).

With regard to the performance prong of Strickland, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001). Strategic decisions are entitled to a "heavy measure of deference." Strickland, 466 U.S. at 691. "Given the strong presumption in favor of competence, the petitioner's burden of persuasion--though the presumption is not insurmountable--is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as [appellate] counsel acted . . . ." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Smith v. Wainwright, 777 F.2d 609, 616 (11th Cir. 1985). Under the prejudice prong of Strickland, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome . . . ." Id. at 616 (citing Strickland, 466 U.S. at 694-95). As the Eleventh Circuit has ruled, an affirmative showing of prejudice that would undermine the results of the proceedings is necessary because "'attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations omitted).

Along with these basic principles concerning ineffective assistance of counsel claims, the Court must also consider the facts underlying Petitioner's conviction. These facts are set forth in the Georgia Court of Appeals decision and, pursuant to § 2254(e)(1), are presumed to be correct. Viewing the facts in a light most favorable to the verdict, the Georgia Court of Appeals determined that:

> After the United Parcel Service (UPS) alerted police to the suspicious nature of a package shipped from "Helen White" in California to "Kate White" in Augusta, a police investigation at the UPS facility revealed an open package which contained suspected marijuana wrapped in cellophane and surrounded by substances commonly used to mask the odor of marijuana. Posing as a

UPS agent, a police officer called an Augusta phone number given to UPS and arranged with a person called "Dante White" for the package to be picked up at the UPS location. Prior to the pickup, the officer also went to the Augusta address listed on the package, 2814 Ridgecrest Drive, and observed two cars located at the address. On the day of the pickup, [Petitioner] and Hall rented a car which they supplied to another co-indictee, Joseph Scurry, Jr., who used the car to pick up the UPS package. When Scurry arrived at UPS, he was followed by [Petitioner] and Hall in a car previously seen by the officer at the 2814 Ridgecrest Drive address. Police arrested Scurry as he walked out of the UPS facility with the package, which evidence showed contained 40.1 pounds of marijuana with a street value of about $200,000. Officers stopped [Petitioner] and Hall as they attempted to drive away immediately after Scurry was arrested. Observing two cell phones in the car occupied by [Petitioner] and Hall, an officer used a police cell phone to call the phone number at which he had previously spoken to "Dante White," and both cell phones in the car rang simultaneously. The officer answered the cell phone adjacent to Hall and discovered that he was speaking to himself on the police cell phone.

Police then took [Petitioner] and Hall to an apartment at the 2814 Ridgecrest Drive address to accompany officers during [the] execution of a search warrant. As the officers approached the door to the apartment, Hall broke away from the officers and ran, and [Petitioner] collapsed to the floor screaming, "Lord, please save me. Don't let them take me in here." Although the apartment was rented in Patten's name, officers gained entry through the locked apartment door with a key they found on [Petitioner's] person. In their search of the apartment, officers found 1,000 grams of suspected powdered cocaine (later tested and proved to be 73 percent pure cocaine) wrapped in the same red cellophane used to wrap the marijuana found at the UPS facility, along with $98,864 in cash. The apartment search also produced documents showing that [Petitioner], Hall, and Patten occupied the apartment. In addition to various men's clothing found in the apartment, police found a California birth certificate for [Petitioner's] child, a check showing [Petitioner's] payment of child support, and numerous other personal documents belonging to Hall and Patten. In a separate search of [Petitioner's] car, police found a digital scale under the driver's seat like scales commonly used for weighing contraband, along with a piece of paper displaying the address from which the marijuana was shipped by UPS from California.

Taylor, 647 S.E.2d at 383-84.

### a.    Failure to Object to Excusal of Juror

In deciding whether Petitioner's attorney rendered constitutionally ineffective assistance of counsel in failing to object to the excusal of a juror, the state appellate court noted that a trial judge has the discretion to replace a juror if good cause is shown that the juror is unable to perform his or her duty. Id. at 386 (citing O.C.G.A. § 15-12-172). If a juror becomes ill, the judge is under no obligation to consult with a doctor in order to confirm the need to excuse the juror. Id. (citing Smith v. State, 470 S.E.2d 674 (Ga. 1996)). The state appellate court found that the trial judge properly exercised his discretion in excusing a juror after receiving reliable information that the juror's child had been admitted to the hospital for emergency medical treatment. Id. Furthermore, the appellate court found that the judge was not required to contact the doctor or otherwise confirm the medical emergency. Id. at 386-87. As there was good cause for excusing the juror, the Georgia Court of Appeals determined that counsel was not ineffective for failing to object to the same. Id. at 387.

Petitioner re-urges the same claim in the instant petition and alleges that the information leading to the excusal should have been confirmed by the judge and that he specifically informed his attorney that he wanted the excused juror to be a member of his jury. (Doc. no. 19, p. 7). Petitioner goes on to speculate that the information "could very well have come from one who favored the prosecution . . . and felt as though this particular juror was in favor of acquittal." (Id.). The trial judge was not required by law to confirm the information leading to the dismissal, and Petitioner has not produced "clear and convincing evidence" to rebut the state appellate court's factual determination that this information was

reliable. Indeed, Petitioner only speculates that this information could have come from an untrustworthy source. Moreover, the state appellate court applied the correct constitutional standard in evaluating this claim of ineffective assistance of counsel, and it cannot be said that the decision reached was contrary to or an unreasonable application of prevailing Supreme Court precedent. In this regard, he has failed to show that any prejudice inured to him because he has not demonstrated that counsel erred. Thus, this claim lacks merit and should be denied.

### b. Failure to Object to Co-Defendant's Post-Arrest Statement

On direct appeal, Petitioner also argued that his trial attorney was ineffective because he failed to object to the admission of his co-defendant's post-arrest statement, which he contended violated Crawford v. Washington, 541 U.S. 36 (2004). Crawford established that the Confrontation Clause of the Sixth Amendment prohibits the use of testimonial hearsay unless the declarant is unavailable and the defendant has had a prior opportunity to cross-examine the declarant. Id. at 54. The Georgia Court of Appeals noted that because the statement was given during a police interrogation and was therefore testimonial in nature, it was subject to the Crawford rule. Taylor, 647 S.E.2d at 387. The appellate court went on to correctly note that because Crawford was retroactively applicable to Petitioner's case, the admission of the statement would be reversible error unless the state could prove that the error did not contribute to the verdict. Id.

The disputed statement was given by Scurry and disclosed that a man known as Dante White asked Scurry to pick up a package at the UPS facility. Id. at 388. Scurry accompanied White and another man, whom he did not know, to get a rental car and then pick up the

package, even though he did not know its contents. Id. While Scurry's statement did not identify by name the other defendants, other evidence established that the man known as White was actually Hall and that police were able to link Hall to the phone number police called to speak to Dante White. Id. In addition, Petitioner's own testimony was consistent with Scurry's statement. Specifically, Petitioner testified that he agreed to rent a car for Hall and gave it to a man he had never met, only later learning that this man was Scurry. Id. Petitioner also testified that he "had 'no idea what was going on.'" Id.

Based on these facts, which are presumed to be correct, the state appellate court determined that the substance of Scurry's statement was cumulative of Petitioner's own testimony and that the importance of Scurry's statement was minimal. Id. Thus, the appellate court concluded that the admission of the statement was harmless error and that counsel was not ineffective for failing to object to the admitted statement, particularly because Crawford had not been decided at the time of Petitioner's trial and counsel could not be expected to anticipate changes in the law. Id. (citing Redwine v. State, 623 S.E.2d 485 (Ga. 2005)).

Petitioner makes the same argument as part of his federal habeas petition as he did on direct appeal. However, Petitioner has not come forth with "clear and convincing evidence" to rebut the factual evidence on which the appellate court relied in reaching its decision. Moreover, it is clear from the record that the state appellate court properly applied the correct constitutional standard to this claim of ineffective assistance of counsel, and, as with Petitioner's first claim, it cannot be said that the decision reached was contrary to or an unreasonable application of prevailing Supreme Court precedent. Thus, Petitioner has failed

to demonstrate any prejudice resulting to him because he has not shown that counsel committed any error. In sum, this claim also lacks merit and should be denied.

### c. Failure to Prevent Admission of Petitioner's Post-Arrest Statement

In his final claim of ineffective assistance of counsel raised on direct appeal, Petitioner alleged that his attorney erred in failing to prevent the admission of his statement "Lord, please save me. Don't let them take me in here," when the police took him back to the Ridgecrest Drive apartment to execute the search warrant. In evaluating this claim, the Georgia Court of Appeals found that Petitioner invoked his right to remain silent and to have counsel present during any custodial interrogation shortly after his arrest. Id. at 387. However, Petitioner contended that the act of leading him to the door of the apartment was the functional equivalent of custodial interrogation that violated his Miranda[5] rights "because the officers knew this action was reasonably likely to elicit an incriminating response." Id. at 387 (citing Rhode Island v. Innis, 446 U.S. 291 (1980)). As correctly noted by the Georgia Court of Appeals, the Supreme Court held in Innis that custodial interrogation includes "express questioning or its functional equivalent . . . [which means] any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." Innis, 446 U.S. at 300-01. However, the appellate court found that Petitioner was not being interrogated in any manner and that he "spontaneously volunteered the statements . . . ." Taylor, 647 S.E.2d at 387. Accordingly, because there was no error in admitting the statements, the Court of Appeals concluded that

---

[5]Miranda v. Arizona, 384 U.S. 436 (1966).

counsel was not ineffective for failing to prevent the admission of the statements. Id. (citing Strickland, 466 U.S. at 688).

Petitioner presents this same claim in his federal habeas petition, but once again has not presented any evidence, much less "clear and convincing" evidence that would undermine the appellate court's factual determinations upon which it relied in making its determination. Rather, Petitioner simply re-argues that the statements were admitted in violation of his federal constitutional rights. However, it is clear from the record that the state appellate court applied the correct constitutional standard to Petitioner's claims of error; nor can it be said that the decision reached by the Georgia Court of Appeals was contrary to or an unreasonable application of prevailing Supreme Court precedent. Because Petitioner has failed to demonstrate that counsel erred, it cannot be said that he was prejudiced in any way. Thus, this claim of ineffective assistance of counsel is also without merit and should be denied.

### 2. Alleged Insufficiency of the Evidence

In Ground 4 of his federal habeas petition, Petitioner asserts that "the evidence adduced at trial was insufficient to support a guilty verdict." (Doc. no. 19, p. 5). Specifically, Petitioner contends that all the evidence used to convict him was circumstantial and that circumstantial evidence alone cannot sustain a finding of guilt. (Id. at 22). In Jackson v. Virginia, 443 U.S. 307 (1979), the Supreme Court held that, under the Due Process Clause, no person can be convicted unless the evidence is sufficient to convince the factfinder beyond a reasonable doubt of the existence of every element of the offense. Jackson, 443 U.S. at 316. The key issue is whether "viewing the evidence in the light most

favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. The facts of Jackson, however, are dissimilar from those presented here. Moreover, it cannot be said that the result reached by appellate court was contrary to clearly established federal law. Thus, the Court will focus its attention on whether the appellate court unreasonably applied Jackson to the facts of this case.

Along with these basic principles regarding sufficiency of the evidence, the Court is once again guided by the AEDPA's mandate that the state court's factual determinations, as detailed on pages 15-16 above, are presumptively correct absent rebuttal by clear and convincing evidence. See 28 U.S.C. 2254(e)(1). In applying Jackson to Petitioner's claim of insufficiency of the evidence, the appellate court noted that there was "ample evidence" to support the conviction on the possession count. Taylor, 647 S.E.2d at 384. The court specifically noted that Petitioner rented the car used by Scurry to pick up the marijuana at the UPS facility. Id. He then gave the car to Scurry and followed him to UPS facility. Id. In addition, police found the address from which the drugs were shipped in Petitioner's car, and Petitioner indeed occupied the apartment shown on the shipping address. Id. As to Petitioner's concern regarding the circumstantial nature of the evidence against him, the state appellate court specifically found that this evidence "showed a connection between [Petitioner] and the marijuana other than spatial proximity; it was sufficient for the jury to find beyond a reasonable doubt that [Petitioner] had joint constructive possession . . . and was guilty as a party to the charged offense." Id. (citing Jackson, 443 U.S. at 316).

Regarding the charge of trafficking cocaine, the prosecution had to show joint occupancy of the apartment where the cocaine was found in order to obtain a conviction. Id. To this end, the state produced evidence showing that "the apartment was filled with men's clothing, that [Petitioner] had a key to the apartment and had personal papers in the apartment, and that both Patten (who leased the apartment) and Hall had numerous personal papers in the apartment." Id. The state also produced evidence that was sufficient to show joint constructive possession of the cocaine, namely the 1,000 grams of cocaine found in the apartment occupied by Petitioner, the scales typically used to weigh contraband found in Petitioner's car, and Petitioner's "extremely fearful and nervous behavior" as he was led toward the apartment. Id. Addressing Petitioner's concern regarding circumstantial evidence, the appellate court once again noted that this evidence was "sufficient to exclude every reasonable hypothesis save that of guilty and was sufficient for the jury to find that [Petitioner] was guilty beyond a reasonable doubt of trafficking cocaine." Id. at 384-85 (citing Jackson, 443 U.S. at 316).

In the instant petition, Petitioner again asserts that the evidence presented was insufficient to support his convictions. However, Petitioner's assertions are affirmatively contradicted by the record, and Petitioner offers no additional evidence, much less "clear and convincing evidence," in his federal habeas petition to undermine or contradict the factual determinations of the state appellate court. Moreover, the state court applied the correct constitutional standard, and it cannot be said that it unreasonably applied Jackson to the facts of this case, as the record demonstrates that a rational trier of fact could have found Petitioner

guilty of the offenses with which he was charged. Therefore, Ground 4 of Petitioner's federal habeas petition alleging insufficiency of the evidence at trial also fails.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 29th day of May, 2009, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE